Our next case is Epic Systems Corporation v. Tata Consultancy Services Ltd. Appeal Number 22-2420 Mr. Hockman May it please the Court, Rob Hockman for TCS, Your Honors. There are three fundamental points I'd like to make today. First, I'm going to explain why the prior panel rightly remanded for further proceedings, rather than simply ordering entry of a $140 million punitive damages award. Two, that the District Court erroneously treated the remand as requiring entry of a $140 million punitive damages award. And three, why the reduced range that we proposed and we've requested is warranted, and indeed even compelled here, given what an extraordinary outlier affirming this decision would be. And I'm saving the third point for last, because honestly, we don't think it's seriously disputed here. Epic has not and cannot point to any prior, even remotely comparable case to this one in Wisconsin punitive damages law or national trade secret law history. But let's begin with why the panel remanded for further proceedings. And respectfully, we submit that the rationale of the Court's unjust enrichment ruling is essential, really to understanding its final disposition and the scope of the mandate. Sorry, did you say eccentric? No, not eccentric. It's essential to understanding the prior ruling, the rationale, and the scope of the mandate. Now, in the first appeal, we argued that as a matter of law, Wisconsin does not allow an unjust enrichment award that is completely unconnected to the actual harm Epic suffered or the actual gain we received. Now, we lost that argument. We've lost, we're not here disputing that argument. We paid the judgment in full already with interest. That's done. But, and this is critical, we lost that argument only on the law. We did not lose that argument on the facts. And as the panel did not deny, and you can read that panel decision with great care, the prior Court did not deny that the damages award, the $140 million unjust enrichment award, does not reflect what Epic was harmed. And, in fact, Epic conceded that it wasn't even an attempt to do that. And neither does it reflect the actual gain we received. In fact, you know, it was clear, recall, it didn't, for our best, let me focus on our benefit because that's really where the action is. There was no evidence that we used Epic's information to create new software. Mr. Hoffman, it sounds like you want to relitigate the merits. Let me ask you a couple of questions here. First of all, do you agree that under Wisconsin punitive damages law, the defendant's ability to pay is a relevant factor? Yes. Do you also agree that the potential damage that might have been done by these wrongful acts is also relevant? The potential damage that might have been done by the wrongful is relevant, but I don't think it's an especially strong consideration. And it's certainly, it's very relevant and very clearly the basis of the unjust enrichment award itself. Well, the unjust enrichment was benefit to you all. But, I mean, I got to say, the conduct that was found here is the previous panel didn't want us to call it egregious. I'll call it outrageous, scandalous. I don't know why anybody would want to do business with Tata if this is the way they run their business. And, obviously, the jury and the district judge thought pretty serious punitive damages were appropriate. You've attacked the district judge's deference to the jury on the grounds that it was a runaway jury, didn't deserve any deference. Was the jury instructed about any statutory limits? No. And was its punitive damage award within the at least single-digit ratio the Supreme Court has suggested is permissible under the Due Process Clause? It was not more than a single-digit ratio of the damages award, but two things about that. First of all, they actually had a $240 million award, which everybody agreed was erroneous. The district court and the panel agreed it was erroneous. And, second, the Supreme Court has been very careful. And I don't want to relitigate due process. I don't want to relitigate the unjust enrichment award either. But the Supreme Court has been very clear. When damages are large, as they were here, the 9-to-1 ratio doesn't make any sense. And if they're very small, like in the bed bug case. Correct. Right, right. So you don't want to argue due process. What law do you want us to apply here? Yeah, and this law comes from the question is when you look at cases like Honda Motor, which refers back to the traditional supervisory role of courts over juries exercising punitive damage awards. And I commend to your court's review also the Payne decision from the Second Circuit that we cite, where Judge LaValle goes into this with great care. And the Supreme Court, in Gasparini, in Cooper, in Brown and Ferris as well, draws this careful line. It says, well, later on it gets to the due process clause. But it draws this careful line. It says a federal court always has the supervisory authority over a jury's punitive damages award. And that's essentially codified as the wrong word. But it's essentially captured by Rule 59. And is it applying in a case arising under state law? Yes. Is it applying state law or federal law? You can apply state substantive law here. Of course, that doesn't matter because there's no meaningful difference. So the choice of law issue doesn't really matter. But the procedural law, the procedural question. But we also have the panel, as I understand it, saying you waived your other Wisconsin arguments that weren't already addressed. But this is not a Wisconsin argument, right? Well, that's the question. This is the exercise of supervisory authority by a federal court pursuant to common law tradition as captured by Rule 59 and then subject to ultimate appellate review. And Judge LaValle makes the point. But are we applying state or federal common law? Well, I think it's in a way it's both. There's a procedural component that has to be federal. Whether it's state, whether when you're exercising that procedural component that has to be federal, I don't think the Supreme Court has been clear on whether there would be state or federal common law. Look at Gasparini, right? That's the closest case addressing this problem. And Gasparini goes out of its way to emphasize the role of the trial judge as opposed to appellate courts, right? Right. And we've got a district judge here who got the case back, looked at it again, did not enter a rote entry with respect, in my view, but went through your arguments, rejected them, and deserves deference. Respectfully, Judge Hamilton, respectfully, I disagree. I don't think it went through the arguments and rejected them. And you can look at A9 of the appendix, and there's a long paragraph there, and it is very clear. He said the court said expressly, understood its role as only being to consider whether $140 million is still constitutionally infirm. That was the question that the prior panel had already decided. That was not the question that was remanded. And I want to return to why they remanded this, because they understood that the $140 million unjust enrichment award that they had just affirmed at the same time that they turned to punitive damages, they understood that that award performed a significant deterrent function. Even Epic conceded that. That's at R926 at 15. And that's because what was awarded was the calculation. Epic received the maximum cost TCS could have avoided if it had, contrary to fact, developed new software in an attempt to compete. Now, that was deemed potential harm. That was recoverable. But that is emphatically not disgorgement, because we didn't do it. We don't have software that cost $140 million to develop, and there's no dispute about that. So the overlap, what the panel perceived that's really important here, is that the unjust enrichment award is doing a lot of the work already that punitive damages is doing. And whatever the Constitution says about due process limits on punitive damages, that brings really front and center this traditional role that courts play in policing punitive damages awards for rationality and consistency. Can I ask you, where on page A9 of your brief are you referring to? Not, oh, the appendix. Yeah, the appendix. I'm looking at A9 here. The district judge went through and did kind of exactly what we asked district judges to, concluding EPIC is entitled to significant award of punitive damages commensurate with the conduct and proportional to the unlawful windfall it almost got away with keeping. I'm looking at the large paragraph in the middle. It's page 7. Yeah, I'm looking at it, too. Indeed, all of Tata's remaining arguments for a reduction below the constitutional cap by the Seventh Circuit amount to arguments one might make to a jury rather to then, should be rather than, to a court only being asked, only being asked to decide on remand whether a twice reduced one or few is still constitutionally infirm. That's the sentence I'm referring to. And then the next one goes on. Since Tata's arguments are largely unmoored from the constitutional considerations, it criticized us for making arguments that were unmoored from the constitutional considerations when that was exactly what was remanded for it to consider, nonconstitutional arguments under the traditional rule. Were you asking it to apply state law or federal law? We cited both, Your Honor, because it's unclear. But we don't think it matters. We think that in either case, the fact, and it's a federal court's job, as a federal court, I think, quite honestly, that this is probably a federal principle, but I don't think the Supreme Court has clearly answered that question. The federal principle I'm asking this court to apply and we were asking the district court to apply is a standard of rationality. Court judgments should not be. That sounds a lot like the substantive part of the aspirin of the material deviation, right? And if you think that has to come from Wisconsin law, we submit it's there too. It's there too. But with Wisconsin law, we also have this premise, as we discussed at the outset, of the relevance of the defendant's wealth as it may affect deterrence and the relevance of potential harm of such wrongful conduct that needs to be deterred. And with respect, Your Honor, if that potential harm, we're talking about things like potential commercial harm, there'd be some case, somewhere, sometime in the entire history of business tort law where an appellate court has affirmed an award, a punitive damages award in a business tort only case, even as high as what we've proposed. And Epic has cited none, never. It's unprecedented, truly unprecedented. And as for our ability to pay, one, once you understand, as the prior panel did, that $140 million for the only use we made is this comparative analysis. We get no software. We have no functioning item, and there's no dispute about that. There's no evidence of that at all. They looked at all of the code of our software. They had every version we ever made. They found no evidence that we incorporated their information into our products. It's very important. So the deterrent function is significant from this $140 million award, and respectfully, Your Honor, $10 to $25 million for a business tort case, an unprecedented amount of money, that's significant, and I don't think that's a mere slap on the wrist. We didn't go back. Why 25 and not 50? Well, respectfully. I mean, what are we doing here, right? Well, what we're doing is we're trying to align, and this is, again, pain is clear on this. Pain is very good on this. If appellate courts don't impose some measure of rationality and consistency in the exercise of punitive damages, we're inherently subjective. Everybody admits that. How to punish and how to deter. If appellate courts don't do it, it won't get done. And what you do, Your Honor, is you could. How do we get to the range of 10 to 25? Well, we had to think of some number that would take into account all of the circumstances, and we chose what we thought was reasonable under the circumstances, even though the numbers we chose were themselves unprecedented. The point is you affirm $140 million. That's not just a crazy outlier in this case. That's the new yardstick for future business tort cases. That is a big deal, and it's potentially disruptive, and Judge LaValle's opinion in Payne and Judge Easterbrook's and this court's opinion in Perez, which talks about freakish awards, that's the definition of this case, Your Honor. So how does that apply, let's say, to antitrust? Trebling of damages, which is not even discretionary. It's automatic. Is that similarly freakish, unfair, and violating due process? I think that in those situations you're not in the zone where common law courts are supervising runaway jury awards, which is a significant problem, historically understood to be a significant problem, and been a historic power of federal courts, as this court recognized in Lust, in Perez, in Sacramento, that the Second Circuit is recognized in Payne. I'd like to reserve some time for rebuttal, but if there are further questions, I'm happy to continue. No, you can reserve your time for rebuttal. Thank you, Your Honor. Mr. Brody. Thank you, Judge Kirsch. Michael Brody for Ethics Systems. May it please the court, I feel that there's a little bit of a sense of déjà vu all over again. The arguments we're hearing today are very similar to what were argued in the first appeal. But I think this appeal turns on the question that I believe Judge Hamilton asked, and that is what law are we being asked to apply here on remand? For TCS has had ample opportunity at every stage of this case to raise every possible argument for why the award is excessive, including every one of the arguments they're raising today. They've had their day in court, they've had close to a decade in court, and they have either already lost those arguments or waived them. And in the decision under review, the district court faithfully applied this court's remand decision, gave TCS every opportunity to raise their arguments, determined that most of them were arguments that were simply being rehashed and rejected the rest. So let me turn to that first point, that all grounds that TCS asserts have been addressed, rejected, or waived. The Wisconsin statute and the constitutional limit are behind us, but I think the claim has to either rest on Wisconsin common law or federal common law, and neither is available to TCS. First, on Wisconsin common law. TCS raised the argument they're raising today about the excessive punitive damage claim, the claim that the damages were excessive and beyond what was necessary in an outlier under Wisconsin law, in a post-trial motion filed in 2016. It was denied by the district judge in 2017. They made exactly the same argument in their second post-trial motion, denied again this time in 2019. But TCS ignores what happens next. They did not appeal that determination. When this matter came before the court the last time, TCS raised four arguments, and the court outlined those four arguments in its opinion and disposed of every one of them. The argument that this was an outlier under Wisconsin law and exceeded the power of the district court to affirm was not raised, and this court concluded then what this court should conclude now. The court said at page 1145 of its opinion that that being the due process test. So the court concluded TCS has waived any argument that Wisconsin law might produce a different result. That was in the very last paragraph of the court's opinion before the word conclusion, after the paragraph began, in sum. So there are two consequences to draw from that. One is that TCS can't raise an argument, abandon it on appeal, and then assert it in a second appeal. That's just waiver. But we're here interpreting what this court meant when it issued its prior opinion, and it's unreasonable to interpret this court's prior opinion to instruct the district court to go back in time, revive a waived argument, and consider it anew in a remand where the remand order contains no such language. And the district court correctly perceived that, stating at page A5 of the appendix that TCS was just rehashing old arguments. What about federal common law? Well, I think Erie answers this question. The last time we were here, TCS argued that only state law applied. They conceded there was no applicable federal law, and this court said as much. And that, of course, is compelled by Erie. Now, there is a role for federal courts to play in reviewing punitive damage awards, just like federal courts have that role in reviewing every award. That role comes from Rule 50 and Rule 59, which the district court applied in deciding the post-trial motions. TCS makes much out of the Cooper case. In Cooper, the Supreme Court held that you have a de novo standard of review for the constitutional standard. Got it. But then it went on to say, what about the other issues? And the court had the following language, which is on point. The court said, a good many states have enacted statutes that place limits on the permissible size of punitive damage awards. Wisconsin does. When juries make awards within those limits, the role of the trial judge is to determine whether the jury's verdict is within the confines set by state law and to determine, with reference to federal standards under Rule 59, whether a new trial or remitted or should be ordered. That was the prior post-trial motion. Judge Conley denied it twice, and that was not appealed. The court went on and said, if no constitutional issue is raised, the role of the appellate court, at least in the federal system, is merely to review the trial court's determination under an abusive discretion standard. So yeah, there is a federal review of jury verdicts. Federal Rule of Civil Procedure 50 and 59 permit it. But that's been satisfied here. But the next point I'd like to make is, well, what do we make of the court's remand instructions? And this court, at the beginning of its discussion of punitive damages, advised litigants and future courts to address constitutional issues second after resolving the non-constitutional issues. And TCS takes some comfort from that language. That's just the principle of constitutional avoidance, that courts should look for ways to resolve cases without reaching the constitutional arguments. And TCS relies on those cases, but they turn them on their head. TCS would interpret this court's prior opinion as saying, the Constitution limits damages to $140 million. Now, district court, go back and see if there's a reason to lower it below that. In other words, district court, go back and make a decision that moots the constitutional analysis we just engaged in. That's not how this court operates. In Sacramento, that's not what the court ordered. In Perez, the court did not reach the constitutional issue. It sent it back to decide the non-constitutional issues first. In Beard, the court said exactly the same thing. This court said, the court is only to address the constitutional issues if the other issues lead to a higher punitive damage judgment. And I contend in Epic, it's the same. This court's prior opinion was not an advisory opinion to go back and see if there's a reason why the district court can moot the decision of this court. I don't know, as a district judge, I got a few remands that said, in essence, we'd like you to think about this some more. Well, Your Honor, if there was a non-constitutional issue remaining, that's what this court would have done the last time. It would have said, there's a non-constitutional issue remaining that you haven't addressed sufficiently. Go back and think about it some more. And then we'll decide whether to reach the constitutional issue. In the Beard case, it's a great case, the district court applied a 5 to 1 ratio. This court said, we're not even going to look at that 5 to 1 ratio because there's some antecedent issues you have to decide first. Go back and decide them. But that's not what the panel of this court did two years ago. What if I'm wrong? What if these issues remain live? They've not been waived or decided. Did the district court abuse some discretion, which is the standard that Cooper tells us? The answer is no. Procedurally, the district court gave TCS every opportunity to raise every argument, and it addressed them on the merits. Did the district court improperly defer to the jury verdict? No, I don't think so, Your Honor. I think the district court applied both in 2016 and in 2017 when given the post-draw motion. And again, the district court went back and looked at the facts as it did, and that decision is not an abuse of discretion, as Cooper would apply. TCS makes much of the fact that this award is unprecedented, and I'll speak to the facts in a moment, but it's really not. The Exxon Valdez case, obviously very different facts, 500 million in punitive damages. The Sintel case, it's a district court case we cited in our briefs. It was decided after the prior decision in this court in Epic. It came up under the Defend Trade Secrets Act case, and that statute authorizes juries to award damages, like Wisconsin law, under an avoided cost theory, and that's what the jury did. It awarded $285 million in compensatory damages on an avoided cost theory, just like here. It awarded two-to-one punitive damages, applying the two-to-one statutory cap in that statute, just like here. It came up to the district court on post-trial motions, and the district court applied this court's decision in Epic I. It didn't do it as a matter of constitutional law. It did it as a matter of common law and followed it and reduced the punitive damages to one-to-one, upholding punitive damages of $285 million, twice what we have here. There are prior cases, but those cases are interesting because Sintel and Exxon Valdez are cases in which federal courts applying federal common law look to the Gore factors to inform the decision about what an excessive award is. In both those cases, that's exactly what the court did. The realization that federal common law, or this review of punitive damages under federal common law, merges with the Gore factors really supports affirmance here because this court has already made that determination. One more point that I'd like to make with the court's indulgence, and Mr. Hochman has referred to this, and maybe it's the elephant in the room, the damages here are large. $140 million is a lot of money. As I pointed out, it's a large trade secret award, not the largest. Sintel was twice as big. There was a Virginia trial court determination last summer in a case called Appian. It hasn't been reviewed yet, for $2 billion. The numbers are out there, and as Judge Hamilton pointed out in antitrust cases all the time, exemplary awards that dwarf this are upheld. But that's not my point. My point isn't that this award should be affirmed because there are other awards like it. My point is the award should be affirmed because it should be large, because the conduct and TCS merit to this kind of award. There is no mathematical rule that courts should apply. Courts should consider all the facts and circumstances of the case. And here we are, years removed from the trial, years removed from the facts. It's easy to forget why we're here. But the punitive damages here reflect a record of intentional, repeated theft organized and sanctioned from the highest levels of TCS. From their headquarters in India and seemingly free from detection, TCS hired someone for the express purpose of infiltrating Epic's trade secrets. He shared his credentials with an unknown number of people. They copied and viewed and downloaded hundreds of thousands of pages of documents, and they did it to infiltrate the portion that made Epic's software, which is used in most hospitals across this country, valuable. And when they were caught on it, they engaged in a practice, in their words, to suppress the truth. Despite being a global technology leader, they failed to preserve documents, they allowed documents to be overwritten, were criticized for not knowing the extent of the theft and who used it. Well, there's a reason for that because documents were lost. And that's why the trial judge awarded an adverse inference instruction. So the award is large because of what TCS did. It's also large because of who TCS is. $140 million is a lot of money. I cannot deny that. It's 4% of what TCS earned in the year this case went to trial. That was $3.5 billion. Wisconsin law allows the consideration of wealth. Their income in one year was, this was only 4% of one year's income. Since trial, they've earned profits approaching $23 billion. So $140 million, absolutely a lot of money. But it's appropriate here. Now, it may sound like I'm making a jury argument, and I'm trying not to. I'm just reminding the court that the assessment of punitive damage is not just an academic exercise. It's a judgment of the conduct and the defendant. And the award is large because it should be. We know that because the jury told us that. We know that because Judge Conley told us that in denying the first post-trial motion, the second post-trial motion, and in upholding the award on remand. And we know that because this court so ruled in applying the Gore factors and finding that $140 million did not offend the due process standard when judged on reprehensibility and the conduct at issue. So, yes, $140 million is a lot of money, but it shouldn't be any lower. And if TCS has a complaint, it is not with the district court. It's with its own conduct. Thank you. Mr. Hockman, we'll give you two minutes. Thank you for your indulgence, Your Honor. I'll try and be brief. Recall, in the prior appeal, the parties sought rehearing. After the rehearing, the prior panel went out of its way to add the discussion of Sacramento and Perez, to add a reference to the power of a court to review freakish awards. It had already said in its disposition the remand should be for consideration of at most $140 million. You have heard today no explanation for that remand. And as for why we think there was an abuse of discretion, it's because what the Seventh Circuit asked for has never happened. It asked for a consideration of these non-constitutional issues in light of its opinion, in light of the analysis of this decision. That could not have come before. And as for forfeiture, this was fully briefed because of the remand to the district court. They had every opportunity to make all their arguments. The district court had every opportunity to rule on it. And as I've detailed, and as A9, that ultimate paragraph showing the analysis, reveals, the district court just didn't do it. And we're asking for this court to provide the relief that this court said is necessary, in light of the fact that unlike any other case, and there are other cases out there, there are certainly other trade secret cases out there with large damages awards, but the rationale of this decision is a large, unjust enrichment award that is not disgorgement. It is not restoring the parties to their prior position and then punitive damages on top. It is a massive award with significant deterrent effect and then on top an additional punitive damages award. Allowing that kind of yardstick, allowing that kind of ruling, an unprecedented ruling to stand, would create a whole new world that, in fact, the court's review that the court ordered anticipates against, that Payne advises against, and that Justice Breyer, in a separate opinion in Gore, emphasized, that treating like cases alike, ensuring some degree of rationality in the system, is the essence of law. For those reasons, we respectfully request that Your Honors vacate the judgment and then order entry of this reduced punitive damages. Thank you, Mr. Ackman. The case will be taken under advisement.